UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| MICHAEL MAJIED, | CASE NO. 1:09 CV 0344 |
| Plaintiff, | JUDGE JAMES S. GWIN |
| v. | |
| | MEMORANDUM OF OPINION |
| CUYAHOGA COUNTY | AND ORDER |
| BOARD OF COMMISSIONS, et al., | |
| Defendants. | |

Pro se plaintiff Michael Majied filed the above-captioned in forma pauperis action against the following defendants: Cuyahoga County Board of Commissioners, Kennth [sic] J. Lusnia, Marita Kavalec, Joyce Ritchie, William Fromwiller, Sandy Spilker, Kristin Ziemnick, Gladys Lumbus, Janice Almeida, Montago Bradley and SEIU/DISTRICT 1199. He asserts the defendants violated his Eighth Amendment rights, conspired to deprive him of civil rights pursuant to 18 U.S.C. §§241, 242, and 5 U.S.C. § 7116, violated contractual protections set forth in the collective bargaining agreement, libeled and defamed his character and "violated his Constitutional Rights as they pertain to fair and equitable treatment, and employment issues." (Compl. at ¶ 1). He is seeking $1 million in damages from the Board of Commissions, $1 million from the individual defendants and punitive damages from all defendants for pain and suffering.

*Background*

Mr. Majied provides extensive details of the facts which led to the filing of his complaint in this court. In substance, he was hired in February 2000 by the Board to work as a Legal

Services Clerk at the Cuyahoga County Juvenile Court. During the course of his employment he consistently earned satisfactory evaluations.

Between the years 2004 and 2007, Mr. Majied was approached by his supervisor Joyce Richie and her supervisor, William Fromwiller, who both requested plaintiff 'back date' court documents "so that they could be submitted favorably to the Court of Appeals." (Compl. at ¶ 13.) Plaintiff responded that he would comply with their request if they submitted it in writing and stated "it was not a crime." The defendants allegedly found some one else to fulfill their request, but plaintiff continued to challenge improper management procedures, "which did not make the plaintiff the most popular person among his superiors, albeit, the plaintiff followed the proper protocol." (Compl. at ¶ 11.)

In January 2008, a new computer system was implemented in the Clerk's Office. Management staff were aware that the system had several limitations. Under the circumstances, Mr. Fromwiller allegedly directed employees to work with the system as best they could, and to send orders out incorrectly, explaining they could always correct the information later. Mr. Majied complained that, over time, the shortfalls in the new system created confusion and frustration that was confounded by a lack of cross training, and an ever increasing backlog resulting from other departments' improper processing. Ultimately, the situation created an "unbearable" stress level for Mr. Majied.

On May 8, 2008, plaintiff filed a grievance with SEIU delegate Janice Almeida. He complained of headaches from the stress of his work environment. As a remedy, he requested "cross training, accountability from other units, [and] open channels of communications to other units for clarification purposes." (Compl. at ¶ 24.) Fourteen days later after filing, a meeting was held with

Mr. Majied, Janice Almeida, Joyce Ritchie and William Fromwiller to address plaintiff's concerns. A memo to Mr. Majied from Mr. Fromwiller, dated May 29, 2009, summarized their meeting and indicated the parties agreed Joyce Ritchie would "communicate the status of enhancements and 'fixes' to the information system to you and her staff. . . . We asked you to communicate any problems or concerns that you encounter to Joyce.  We agreed to meet again on June 17, 2008 to evaluate the progress that we achieve to maintain open channels of communication." (Pl.'s Ex.  E., Memo from Fromwiller to Majied of 5/29/08).

Two weeks after the memo from Mr. Fromwiller was issued, plaintiff complained to Ms. Almeida that nothing had changed. He requested she take the grievance to the next step. On or about June 16, 2008, however, Mr. Majied was called to the Human Resources Office.  Two personnel officers, defendants Kristin Ziemnik and Sandy Spilker, advised Mr. Majied that  a co-worker made an allegation that he sexually harassed her on June 9, 2008.  Surprised, Mr. Majied recalled an attempt to scare co-worker Yesina Torres with a toy mouse with which he earlier helped her scare another co-worker.  He said he was under a desk adjacent to Ms. Torres's desk when he unsuccessfully tried to scare her with the mouse.  He notes Ms. Torres is a close friend to his supervisor Joyce Ritchie.

One month after the interview, Ms. Ziemnik advised plaintiff that their investigation of the sexual harassment claim had concluded.  On July 11, 2008, Mr. Majied sent an electronic message to her requesting "charges, witness statements, and the investigative findings." (Compl.at ¶ 29.)  He was advised there were no written findings in the investigation.  He did review a description of the events which Ms. Torres provided and deemed them "contradictory."

That same day, union representative Montago Bradley approached plaintiff to warn

him to "cool it," because someone in the personnel office told him Mr. Majied was "tampering with witnesses." Three days later, Ms. Ritchie 'wrote up' plaintiff on a "laundry list of erroneous infractions." (Compl.at 32.)

At the Mr. Majied's pre-disciplinary hearing on July 24, 2008, Ms. Ritchie was assigned as the Hearing Officer, in spite of the fact that she was also the charging party. While plaintiff voiced his objections to this arrangement, he alleges he was ignored. When provided the opportunity to address her allegations he voiced concern that Ms. Ritchie was retaliating against him for filing a grievance. Mr. Majied's SEIU delegate began kicking plaintiff's foot to silence him. Instead, Mr. Majied claimed he had a grievance that was a pending and which he believed raised legitimate claims regarding the working conditions. Ms. Ziemnik interrupted to explain the grievance was lost because plaintiff failed to appeal it to Step 2. Surprised, Mr. Majied retorted that he had provided Janice Almeida with his reasons for taking his grievance to Step 2. His SEIU delegate began to kick him again and stated, "Yeah, that's a shame, you should be able to trust your delegate to follow through." (Compl.at ¶39.) At some point during the hearing, Ms. Ziemnik interjected the fact that she had interviewed 15 of plaintiff's female co-workers and 11 complained they were sexually harassed by him. When he asked who these women were or why there were no written findings, his union representative began kicking him again.

After returning from the hearing, a co-worker asked Mr. Majied how the hearing went and he responded, "'Not too good. I can see why some people go postal at their jobs.' One of the co-workers remarked, 'Well don't you go postal.' We had a laugh about that." (Compl.at ¶46.) From this point, Mr. Majied filed a series of grievances, but in the interim plaintiff's remark was reported to the personnel office.

On August 11, 2008, Mr. Majied was summoned to the personnel office. The staff confronted him about his "postal" comment and explained that threats were to be taken seriously. Despite his protests, plaintiff was placed on immediate administrative leave. He was also directed to have no contact with any court personnel except Mrs. Kavalec. He was then handed a form explaining he would be scheduled for a medical examination for Fitness for Duty. Mrs. Spilker explained that he would receive a physical examination and some tests.

On August 13, 2008, Mr. Majied received a letter by messenger instructing him to report for a Fitness for Duty examination the next day. The letter noted, "failure to attend this examination may result in progressive corrective action." (Compl.at ¶ 53.) The following day, Mr. Majied reported to the doctor's office indicated on the letter. While plaintiff believed he was reporting to the office for a physical examination, the doctor explained he was a psychiatrist. Moreover, the psychiatrist explained the defendants asked him to examine plaintiff because "[y]ou've got a lot of problems, sexually harassing women, poor work performance, threatening to shoot up the place." (Compl.at ¶ 56.) When Mr. Majied explained that the allegations were not true, the doctor retorted: "You know what I told them about you? If this guy is such a screw up why do [sic] you just fire him and have done with it." (Compl. at ¶ 56.)  He then asked plaintiff to sign a full disclosure release form. Feeling "set up" and uncomfortable with the doctor's statement, plaintiff chose not to sign the disclosure and the psychiatrist explained he would not proceed without his signature and he was excused.

After Mr. Majied complained to Ms. Kavalec that he did not believe a psychiatrist's examination or signing a disclosure was necessary, she responded that the County was paying for the examination and needed plaintiff's signature on the disclosure. While a follow up examination

5

was scheduled with the same doctor on August 21, 2008, plaintiff kept the appointment but, again, refused to sign the disclosure and the doctor refused to examine him.

During an August 25, 2008 pre-disciplinary hearing, Mr. Majied was charged with being Insubordinate and Interfering or Refusing to Cooperate with an internal/external investigation. In spite of his explanation for not signing the disclosure, plaintiff's employment was terminated. He claims his termination was effected "without observing the protocol of progressive discipline as prescribed in the bargaining agreement that was in effect at the time." (Compl.at¶ 64.) Moreover, he was terminated the same week his grievances against his supervisor were scheduled for a hearing.

*Standard of Review*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss a claim under 28 U.S.C. §1915(e) if it fails to state a basis upon which relief can be granted, or if it lacks an arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). While plaintiff may have an arguable claim of tortious interference with employment, as preempted by § 301 of the LMRA,[1] the same cannot be said for plaintiff's claims

---

[1] Section 301 of the Labor Management Relations Act (LMRA) provides that "[s]uits for violations of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has held that this section preempts state law claims that allege a violation of a collective bargaining agreement. See Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 405 (1988); Allis-Chalmers Corp v. Lueck, 471 U.S. 202, 220 (1985) (holding that if the resolution of a state-law claim depends upon interpreting the terms of a collective bargaining agreement, then the state-law claim is preempted by the LMRA). "Section 301 is premised on the principle that the relationships created by a collective bargaining agreement must be defined by an application of 'an evolving federal common law grounded in national labor policy.' " Oberkramer
(continued...)

6

of Eighth Amendment violations, Conspiracy and Deprivation of Rights under Color of Law pursuant to 18 U.S.C. §§ 241 and 242 violations, as well as unfair labor practices pursuant to 5 U.S.C. § 7116 are dismissed pursuant to section 1915(e).

*18 U.S.C. §§ 241 & 242*

Mr. Majied's claims of conspiracy to deprive him of rights in violation of 18 U.S.C. §§ 241 and 242 should be dismissed, because the law is clear that these sections do not provide a basis for a civil liability. Watson v. Devlin, 167 F.Supp. 638, 640 (E.D. Mich.1958), aff'd 268 F.2d 211 (6th Cir.1959); Agnew v. Compton, 239 F.2d 226, 230 (9th Cir.1956), cert den. 353 U.S. 959 (1957). Because neither section 241 nor 242 provide for a private right of action, plaintiff's reliance on them is misplaced. See Powers v. Karen, 768 F. Supp. 46, 51 (E.D.N.Y.1991).

*5 U.S.C. § 7116*

Under the Federal Service Labor-Management Relations Act, 5 U.S.C. § 7101 et seq., the Federal Labor Relations Authority (FLRA) has responsibility for resolving complaints of unfair labor practices by federal agencies or by the unions representing agency employees. See id. at § 7105(a)(2)(G). The purpose of Chapter 71, "Labor-Management Relations" of United States Code Title 5 ("Government Organization and Employees") is "to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government. The provisions of this chapter should be

---

¹(...continued)
v. IBEW-NECA Serv. Ctr., 151 F.3d 752 (8th Cir.1998) (citation omitted).
    Mr. Majied alleges the defendants circumvented "the bargaining agreement which calls for a protocol of progressive discipline;" therefore, as his claims of breach and tortious interference require an interpretation of the terms of the collective bargaining agreement between his employer and the labor union they are preempted by the LMRA. See Allis-Chalmers, 471 U.S. at 220

7

interpreted in a manner consistent with the requirement of an effective and efficient Government." 5 U.S.C. § 7101(b).

The term "'agency' means an Executive agency (including a nonappropriated fund instrumentality described in section 2105(c) of this title and the Veterans' Canteen Service, Department of Veterans Affairs), the Library of Congress, the Government Printing Office, and the Smithsonian Institution." 5 U.S.C. § 7103(a)(3). Thus it is clear that the protections of the statute and its purpose are directed at federal agencies. Moreover, section 7118(a)(1) provides a mechanism for the filing of a complaint with the Federal Labor Relations Authority ("FLRA") in any case in which an agency is charged with having engaged in an unfair labor practice.[2] The definition of unfair labor practice includes actions taken by an agency "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter" 5 U.S.C. § 7116(a)(1).

Inasmuch as Mr. Majied has not alleged any § 7116 violation by a federal agency, nor has he pursued his complaint through the FLRA, his unfair labor practice claims are dismissed.

*Eighth Amendment Claim*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. Estelle v. Gamble, 429 U.S. 97 (1976). Mr. Majied claims that the defendants' "malicious termination of plaintiff's employment in the face of a dismal economy"

---

[2]The relevant provision states:

> If any agency or labor organization is charged by any person with having engaged in or engaging in an unfair labor practice, the General Counsel shall investigate the charge and may issue and cause to be served upon the agency or labor organization a complaint.

5 U.S.C. § 7118(a)(1).

violates the Eighth Amendment. Because this allegation does not involve the defendants' treatment of Mr. Majied after his commission of a crime, he has failed to state an Eighth Amendment claim.

## *Conclusion*

Based on the foregoing, Mr. Majied's motion to proceed in forma pauperis is granted and plaintiff's Eighth Amendment, deprivation of civil rights pursuant to 18 U.S.C. §§241, 242, and unfair labor practice claims under 5 U.S.C. § 7116 are dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3] Mr. Majied's Section 301 of the Labor Management Relations Act claims of breach and tortious interference, as well as his state law claims shall proceed against the defendants. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process, **which must be perfected within 120 days of this order**. The Clerk's Office shall include a copy of this order in the documents to be served upon the defendant.

IT IS SO ORDERED.

Dated: June 10, 2009                               *s/     James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE

---

[3]     28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.