UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL MAJIED,

        Plaintiff,

vs.

CUYAHOGA COUNTY BOARD
OF COMMISSIONERS, *et al.*,

        Defendants.

CASE NO. 1:09-cv-344

OPINION & ORDER
[Resolving Doc. No. 6]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendants SEIU District 1199 ("SEIU"), Janice Almeida, Montago Bradley, and Gladys Lumbus (collectively, the "Delegate Defendants") move this Court to dismiss pro se Plaintiff Michael Majied's Complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). [Doc. 6.]

Plaintiff Majied generally alleges that he was terminated in violation of a union contract and that SEIU and the Delegate Defendants failed to fairly represent him. [Doc. 1.][1/] Defendants say that this Court should dismiss this action (1) because this Court lacks subject-matter jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. §185(a), and (2) because Delegate

---

[1/] Plaintiff Majied alleged multiple causes of action in his Complaint: (1) violation of the 8th Amendment for "[m]alicious termination of . . . employment in the face of a dismal economy"; (2) conspiracy to deprive civil rights in violation of 18 U.S.C. §§ 241 & 242; (3) unfair labor practices under 5 U.S.C. § 7116; (4) violation of a union contract; (5) libel and defamation; and (6) "[v]iolation of constitutional rights as they pertain to fair and equitable treatment, and employment issues." [Doc. 1 at 2.]

This Court dismissed the 8th Amendment claim, the 18 U.S.C. §§ 241, 242 claims, and the 5 U.S.C. § 7116 claim. [Doc. 3 at 6-9.]

Case No. 1:09-cv-344
Gwin, J.

Defendants Almeida, Bradly, and Lumbus are "immune from suit" under § 301 as union delegates. [Doc. 6 at 4-6.]

In resolving this motion, this Court must decide (1) whether the "employer" requirement in § 301 is a prerequisite to jurisdiction, *see Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 483-87 (6th Cir. 2009); and (2) whether § 301 authorizes suits against union officers, *see Morris v. Local 819, Int'l Brotherhood of Teamsters*, 169 F.3d 782 (2nd Cir. 1999).

Because this Court holds that the employer requirement is not a prerequisite to jurisdiction and because § 301 does not authorize claims against individual union officers, this Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

## I. Standard of Adjudication

The standard of adjudication governing Defendants' motion to dismiss depends on whether the motion is an attack on jurisdiction under Rule 12(b)(1) or an attack on the merits under Rule 12(b)(6).

*I.A.     Motion to Dismiss Under 12(b)(1) or 12(b)(6)*

In a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), like a motion for failure to state a claim under Rule 12(b)(6), this Court "must generally confine its . . . ruling to matters contained within the pleadings and accept all well-pleaded allegations as true." *Tackett*, 561 F.3d at 481 (citations omitted). When, however, a motion under Rule 12(b)(1) turns on a congressionally-established prerequisite to jurisdiction, "a district court may admit extrinsic evidence and resolve disputed facts to decide if the asserted claim satisfies the jurisdictional prerequisite." *Id.* (citations omitted).

To determine the standard of adjudication applicable in this case, this Court must first

Case No. 1:09-cv-344
Gwin, J.

determine whether the "employer" requirement in § 301 is a prerequisite to jurisdiction. Section 301 says:

> Suits for violation of contracts between an **employer** and a labor organization representing employees in an industry affecting commerce **as defined in this chapter**, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (emphasis added). Defendants say that the Cuyahoga County Board of Commissioners, where Plaintiff was employed, is not an employer under § 301. *See* 29 U.S.C. § 152(2) (excluding "any State or political subdivision thereof" from the definition of "employer").

The Sixth Circuit, however, has already held that the "violation" requirement and the "contract" requirement in § 301 are not prerequisites to jurisdiction, but instead are essential elements of a plaintiff's claim to relief. *See Tackett*, 561 F.3d at 486-87 (holding "violation" requirement not a prerequisite to jurisdiction); *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1007 (6th Cir. 2009) (holding "contract" requirement not a prerequisite to jurisdiction). The Defendants offer no argument as to why the "employer" requirement should be treated differently.[2] Accordingly, this Court will treat the "employer" requirement as an element of Plaintiff's claim for relief, and will adjudicate this motion under Rule 12(b)(6).

I.B.    *Rule 12(b)(6) Standard of Adjudication*

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's legal conclusions as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

---

[2] Although this Court rejects the Defendants' argument that the employer requirement in § 301 is a prerequisite to jurisdiction, this Opinion and Order will not foreclose Defendants from later arguing that the Board of Commissioners is not an employer under § 301, and that, therefore, Plaintiff's § 301 claims should fail on the merits.

Case No. 1:09-cv-344
Gwin, J.

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S. Ct. at 1949 (citations removed). Rule 8 does not require "detailed factual allegations, but it requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citations and internal quotations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility requirement is not a "probability requirement" but requires "more than a sheer possibility that the defendant has acted unlawfully." Id. The Supreme Court has explained the line between possible and plausible: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (citations and internal quotations omitted).

## II. Background Facts

Below, this Court will describe the background facts contained in Plaintiff's Complaint, and then analyze whether Plaintiff has stated a claim under Rule 12(b)(6).

*II.A. Factual Background*

From February 2000 until August 2008, Plaintiff worked at the Cuyahoga County Board of Commissioners as a Legal Services Clerk at the Cuyahoga County Juvenile Court in the Clerk's Office. [Doc. 1 at 3.] Plaintiff's Complaint centers around his August 2008 termination and the

-4-

Case No. 1:09-cv-344
Gwin, J.

SEIU's representation of him during that process. Plaintiff has named as Defendants several individuals from the Cuyahoga County Board of Commissioners: Court Administrator Kennth J. Lusnia, Director of Court Services Marita Kavalec, Senior Supervisor Joyce Ritchie, Chief Deputy Clerk William Fromwiller, Deputy Director of Human Services Sandy Spilker, and Personnel Officer 2 Kristin Ziemnik. The present motion to dismiss, however, is only brought by the Union Delegates and the Union itself.

The facts relevant to this case began around January 2008, when the Clerk's Office implemented a new computer system. [Doc. 1 at 4.] Plaintiff alleges that the new system caused problems with dating court filings, and that his supervisors directed him to essentially back-date filings. [Doc. 1 at 5.] Plaintiff says that his new system caused him to have "headaches from the stress." [Doc. 1 at 5.]

Several months after the new system was implemented, on May 8, 2008, Plaintiff filed a grievance about the new system with Delegate Almeida. Chief Deputy Clerk Fromwiller responded to the Plaintiff's grievance by asking for a two week period to address his problems. [Doc. 1 at 5.] When, after two weeks, Plaintiff received no response on his grievance, he asked Delegate Almeida to take the grievance to the Step 2. Several months later, Plaintiff was informed that Delegate Almeida failed to appeal the grievance at Step 2. [Doc. 1 at 7.]

Around five weeks after Plaintiff filed his grievance, on June 16, 2008, Personal Officer Ziemnik and Deputy Director of Human Services Spilker called Plaintiff into the Human Resources Office and informed him that they were investigating a sexual harassment charge against him. [Doc. 1 at 5.] Co-worker Yesina Torres had made the sexual harassment complaint against the Plaintiff on June 9, 2008. [Doc. 1 at 5.] Plaintiff explained the incident as follows: "[Plaintiff] had attempted

-5-

Case No. 1:09-cv-344
Gwin, J.

to scare [] Torres with [a] toy mouse that he and [] Torres had used to frighten co-worker Sharon Walker. . . . [H]e was under the adjacent desk to [] Torres, unsuccessful he came around the other side of the office and confessed that he tried to scare her." [Doc. 1 at 5-6.]

On July 10, 2008, Ziemnik informed Plaintiff that the investigation had concluded. Later the next day, Delegate Bradley told Plaintiff that "someone . . . in personnel had advised [Bradley] that [Plaintiff] was tampering with witnesses and that [Plaintiff] needed to cool it." [Doc. 1 at 6.]

On July 14, 2008, Senior Supervisor Ritchie, "wrote up the [P]laintiff on a laundry list of erroneous infractions." [Doc. 1 at 6.] Plaintiff noted, however, that "Torres is a good friend of [Senior Supervisor] Ritche." [Doc. 1 at 5.] Ten days later, on July 24, 2008, a pre-disciplinary hearing was held, with Ritchie presiding as the Hearing Officer. [Doc. 1 at 6.] Delegate Bradley represented Plaintiff at the hearing. When Plaintiff objected that Richie's charges were "retaliatory" for his May 2008 new-computer-system grievance, Bradley "began kicking [P]laintiff's foot under the desk in an effort to silence [P]laintiff." [Doc. 1 at 6-7.]

Although Plaintiff had begun answering to the charges of unsatisfactory work performance, Defendant Bradley stated that he "just wanted to deal with the Sexual Harassment as that was the more serious charge." [Doc. 1 at 7.] Bradley then asked that Plaintiff "be given another class on Sexual Harassment." [Doc. 1 at 7.] Then Personnel Officer Ziemnik informed Plaintiff that she had interviewed 15 people and had concluded that he had sexually harassed 11 people. She suggested that another class would not help. [Doc. 1 at 7.]

Because the hearing was running long, it was continued until a later date. Plaintiff then returned to his work area, and was asked by coworkers how the hearing went. He responded, "Not too good. I can see why some people go postal at their jobs." [Doc. 1 at 8.]

Case No. 1:09-cv-344
Gwin, J.

On July 31, Plaintiff "filed a battery of grievances" against Senior Supervisor Ritchie. Chief Deputy Clerk Fromwiller informed Plaintiff that these grievances would be heard on August 25. [Doc. 1 at 8.]

On August 11, Deputy Director of Human Services Spilker and Director of Court Services Kavalec met with Plaintiff about the go-postal comment. [Doc. 1 at 8.] During this meeting, Spilker and Kavalec told Plaintiff that he was being placed on paid administrative leave. Spilker and Kavalec then told Plaintiff that they had scheduled a medical exam to test his fitness for duty, which Plaintiff says they described as a physical and some tests. [Doc. 1 at 9.] The paperwork arranging this medical exam informed Plaintiff that a "failure to attend this examination may result in progressive corrective action." [Doc. 1 at 9.]

On August 14, 2008, Plaintiff went to his scheduled medical exam. Because Spilker and Kavalec's earlier description of the appointment, Plaintiff was surprised to find out that this was not a physical and was instead a psychiatric examination. [Doc. 1 at 9.] When the doctor asked Plaintiff to sign a "full disclosure release," Plaintiff hesitated. The doctor then said: "You've got a lot of problems, sexually harassing women, poor work performance, threatening to shoot up the place. . . . You know what I told them about you? If this guy is such a screw up why do you just fire him and have done with it [sic]." [Doc. 1 at 9.] Plaintiff decided not to sign the release and the doctor would not go forward with the examination. [Doc. 1 at 9.]

The next day, on August 15, 2008, Defendants Kavalec and Spilker called Plaintiff about the examination, and informed him that he had to sign to the release because they were paying for the exam. They scheduled Plaintiff to see the same doctor on August 21. [Doc. 1 at 9.] At this second appointment, Plaintiff consented to the examination and signed the full-disclosure release. [Doc. 1

-7-

Case No. 1:09-cv-344
Gwin, J.

at 10.]

On August 25, 2008, Plaintiff had a second pre-disciplinary hearing with Chief Deputy Clerk Fromwiller presiding and with Delegate Bradley representing him. [Doc. 1 at 10.] The parties discussed the second medical examination at this hearing. The Plaintiff does not describe what occurred during the second examination, but his employer was apparently unhappy with his failure to fully cooperate: "Management charged that the [P]laintiff was Insubordinate and Interfering or Refusing to Cooperate with an internal/external investigation." [Doc. 1 at 10.] Plaintiff says, however, that, "[w]hat occurred at the appointments failed to meet with management's expectations, but this was because of [] Spilker's verbal explanation of the nature of the exam and the [] lack of explanation in regards to the releases." [Doc. 1 at 10.]

This same day, Kavalec terminated Plaintiff on the grounds of insubordination and interference and refusal to cooperate with the internal/external investigation, and had him escorted from the premises. [Doc. 1 at 10.] Plaintiff notes that the "termination was a timely convenience for management as they released the plaintiff on the very week that his multiple grievances against [Senior Supervisor] Ritchie were to be heard." [Doc. 1 at 10.]

Plaintiff then attempted to file a grievance about his termination. He sent his grievance to Bradley and also separately had two former co-workers hand deliver the grievance to Delegate Lumbus. [Doc. 1 at 11.] Delegate Lumbus never filed the grievance. [Doc. 1 at 11.]

Apparently, however, the grievance was otherwise filed and heard before Court Administrator Lusnia, who denied the grievance. [Doc. 1 at 11.] After this denial, Delegate Bradley informed Plaintiff that he would file an appeal. [Doc. 1 at 11.] After this communication, however, Plaintiff had trouble contacting Bradley:

Case No. 1:09-cv-344
Gwin, J.

> After not hearing from Mr. Bradley, the plaintiff began a phone campaign to Mr. Bradley to find out the status of his case. Mr. Bradley proved to be more elusive than a greased eel. The [P]laintiff called Mr. Bradley twice a day everyday from the latter part of October 2008 to the middle of December 2008, on both his cell . . . and office phone . . . . Cell number was eventually changed. Plaintiff even resorted to calling Mr. Bradley's boss, Mr. T. Matthews to get Mr. Bradley to return phone calls. (These things can be verified by subpoenaed phone records) Plaintiff believes that this tactic of avoidance by Mr. Bradley was employed to frustrate and delay [P]laintiff's civil action.

[Doc. 1 at 11.] When Plaintiff eventually spoke with Bradley, "after about 30 calls," Bradley told Plaintiff "that it had been decided unofficially that the union would not [sic] longer pursue the [P]laintiff's case." [Doc. 1 at 11.]

On December 17, 2008, the Union informed Plaintiff that it "had indeed decided not to pursue [his] case." [Doc. 1 at 12.]

II.B.    *Plaintiff's Claims*

The Supreme Court has instructed federal courts to construe the pleadings in pro se actions "liberally." *Boag v. MacDougall*, 454 U.S. 364 (1982) (citing *Haines v. Kerner*, 404 U.S. 419 (1972)). Plaintiff's Complaint generally has two separate sets of claims: (1) the claims against the Cuyahoa County Board of Commissioners and his supervisors there, and (2) the claims against the Union and its Delegates.

II.B.1.   *Claims Against Cuyahoga County Board*

Plaintiff says that the Cuyahoga County Board wrongfully terminated him in violation of the bargaining agreement, which "calls for a protocol of progressive discipline." [Doc. 1 at 12.] Additionally, he says that he had no problems at his job until he filed his new-computer-system grievance, and he alleges that his termination was "malicious and retaliatory." [Doc. 1 at 13.] He also says that the Defendants' statements against him were defamatory and libelous.

-9-

Case No. 1:09-cv-344
Gwin, J.

*II.B.2. Claims Against the Union and its Delegates*

Plaintiff says that the Union and its Delegates "failed to make timely filings as prescribed in the union contract." [Doc. 1 at 12.] Plaintiff also suggests, however, that the Delegates acted "in collusion" with the Cuyahoga County Board, [Doc. 1 at 13,] and notes that the Delegates "were also fellow employees of the County [and] had a dual role," [Doc. 1 at 12.]

*II.C. Union Defendant's Arguments*

The Union Defendants say that this Court should dismiss "the Plaintiff's Complaint as it pertains to those claims he purports to bring against the [Union and the Delegate Defendants]." [Doc. 6 at 1.] Defendants say that this Court lacks jurisdiction over the claims against the Union and the Delegate Defendants because the Cuyahoga County Board of Commissioners is not an "employer" under § 301 of the LMRA. As noted above, Defendants have not demonstrated that the employer requirement is a prerequisite to jurisdiction under Sixth Circuit law.[3/]

The Defendants additionally say that this Court should dismiss the Plaintiff's § 301 claims against the Delegate Defendants because "individual Defendants are immune from suit under well-settled law." [Doc. 6 at 5.] Below, this Court will analyze this argument.

### III. Analysis

The Supreme Court has held that "'union agents' are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process." *Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2nd Cir 1999) (citing *Atkinson v. Sinclair Refining Co.*, 370

---

[3/] Defendants further argued that this Court should dismiss the individual Delegate Defendants from this suit altogether. Defendants say that, because this Court does not have subject-matter jurisdiction over the Plaintiff's § 301 claims, this Court lacks jurisdiction over the Plaintiff's state law claims. [Doc. 6 at 6.] Because, however, Defendants have not shown that this Court lacks jurisdiction under § 301, Defendants have not demonstrated that they are entitled to dismissal.

Case No. 1:09-cv-344
Gwin, J.

U.S. 238, 247-49 (1962)). After *Atkinson*, the Supreme Court extended this shield against liability and held that individual union agents were immune from liability "even if the union had not authorized the actor's conduct." *Id.* (citing *Complete Auto Trnasit, Inc. v. Reis*, 451 U.S. 401, 417 (1981)).

Relying on this Supreme Court precedent, in *Morris*, the Second Circuit "join[ed] the other circuits that have considered the issue and h[e]ld that 29 U.S.C. § 185(b) and the caselaw provide a shield of immunity for individual union members in suits for breach of the duty of fair representation." *Id.* (citing *Evangelista v. Inlandboatmen's Union*, 777 F.2d 1390, 1400 (9th Cir.1985); *Montplaisir v. Leighton*, 875 F.2d 1, 4 (1st Cir.1989); *Bey v. Williams*, 590 F. Supp. 1150, 1154-55 (W.D.Pa.1984) (aff'd without opinion, 782 F.2d 1026 (3d Cir.1986))).

Here, to the extent that Plaintiff's Complaint alleges a breach of the duty of fair representation under § 301 of the LMRA against the individual Delegate Defendants, Defendants have shown that they are entitled to dismissal of this claim. This Court, however, will not dismiss the Delegate Defendants from the case entirely, as Defendants have not shown that this Court lacks jurisdiction over the Plaintiff's additional claims against them.

### IV. Conclusion

This Court will **DENY IN PART** Defendants' motion to dismiss because they have failed to demonstrate that this Court lacks jurisdiction over the Plaintiff's claims. But, this Court will **GRANT IN PART** Defendants' motion to dismiss the Plaintiff's § 301 claim against the individual

Case No. 1:09-cv-344
Gwin, J.

Delegate Defendants because individual union agents are immune from suit under § 301. *See id.*

    IT IS SO ORDERED.


Dated: August 14, 2009                            s/       *James S. Gwin*
                                                                       JAMES S. GWIN
                                                                       UNITED STATES DISTRICT JUDGE